IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES E. HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-890 (MN) |
| | ) | |
| WARDEN DAVID PIERCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

James Hall, Washington County Detention Center, Hagerstown, Maryland. Pro Se Plaintiff.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

January 4, 2019
Wilmington, Delaware


NOREIKA, U.S. District Judge:

Plaintiff James Hall ("Hall"), a former pretrial detainee at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, now confined at the Washington County Detention Center in Hagerstown, Maryland, filed this action pursuant to 42 U.S.C. § 1983.[1] (*See* D.I. 3, 4, 5). Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 12). Before the Court are Defendants' motion for summary judgment and Plaintiff's request for counsel, motion to amend, and motion for injunctive relief.[2] (D.I. 68, 80). Plaintiff opposes the motion for summary judgment. (D.I. 80).

I.  **BACKGROUND**

According to the allegations in the First Amended Complaint (D.I. 36), Plaintiff, a pretrial detainee during the relevant time-frame, was transferred from B-Building to maximum housing in Building 22 on June 9, 2014, absent a disciplinary or institutional infraction.[3] (*Id.* at 1, 4). Plaintiff states that he remained in Building 22 until he pleaded guilty to pending criminal charges. (*See* D.I. 80 at 3). Building 22 is part of the MHU (*i.e.*, Medium-High Housing Unit).[4] (D.I. 69 at 1). Plaintiff alleges his housing in Building 22 was unconstitutional because Defendants

---

[1]  When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2]  Plaintiff's motions are contained in his opposition to Defendants' motion for summary judgment and should have been docketed separately.

[3]  Plaintiff's original pleadings state that he was first housed in the MHU on May 19, 2014. (*See* D.I. 5 at 1).

[4]  The MHU is a step down from the SHU (*i.e.*, Security Housing Unit) and a step up from the general VCC population. Inmates in the MHU have more privileges than inmates in the SHU but fewer privileges than inmates in the general population. *See* https://doc.delaware.gov/views/jtvcc.blade.shtml (last visited Jan. 2, 2019).

1

demonstrated "deliberate indifference to a substantial risk of Plaintiff's health and safety." (D.I. 36 at 1, 4). Plaintiff alleges that he was subjected to lengthy stays in "cell isolation with prisoners who had disciplinary problems or who were in protective custody" and subjected to other hardships such as lights on 20 hours a day, no drinking water in the yard, sleeping on a mattress on the floor, inadequate food rations, and poor medical care. (*Id.* at 2).

Plaintiff alleges he was punished unnecessarily when he was housed in Building 22 for 217 days, and he suffered severe physical and emotional harm. (*Id.*). Plaintiff also asserts that he was housed in MHU for eight months. (D.I. 80 at 7). The record reflects that Plaintiff was transferred from the VCC to Morris Community Corrections Center in Dover, Delaware, on November 15, 2014. (D.I. 27 at 9). Using the MHU May 19, 2014 entry date from the initial pleading, Plaintiff was housed in the MHU for 180 days or five months and 27 days. Using the MHU June 9, 2014 entry date from the First Amended Complaint, Plaintiff was housed there for 159 days or five months and six days.

Count I is against Defendant David Pierce ("Pierce") the former VCC warden; Count II is against Defendant Sgt. Austin ("Austin"); Count III is against Sgt. D. Doane ("Doane");[5] and Count V is against Delaware Department of Correction ("DOC") Commissioner Perry Phelps ("Phelps").[6] The First Amended Complaint does not contain a prayer for relief although the

---

[5] It is Defendants' position that Doane was not properly served but, regardless, the legal arguments of Pierce and Austin are applicable to Doane. (*See* D.I. 68). Count III alleges that Plaintiff complained to Doane about his housing assignment that as a pretrial detainee he should not be housed with sentenced inmates, and Doane failed to take reasonable measures to abate the risk of harm. (D.I. 36 at 3). While Plaintiff has made numerous attempts to serve Doane, the Court now finds it unnecessary given the current posture of the case.

[6] The claims in Count IV were raised against Sgt. M. Williams who was dismissed as a defendant on December 29, 2015. (*See* D.I. 38).

2

original pleadings sought compensatory and punitive damages as well as injunctive relief. (*See* D.I. 5 at 12).

The record reflects that Plaintiff submitted a grievance in June 2014 complaining that he was served cold food, his daily food rations were less than 2,000 calories, and he was sleep deprived. (D.I. 80 at 38-4). Plaintiff complained that he did not receive proper food portions because the servers would shake food from the serving spoons. (*Id.* at 61). During the grievance procedure, Plaintiff was advised by Lise Merson that she would direct a tray assessment to ensure proper serving sizes. (*Id.* at 63).

In Plaintiff's November 6, 2018 affidavit, he states that he spoke to Pierce in June or July 2014 in the hallway of Building 22 when Pierce was conducting a tour. (*Id.* at 74). Plaintiff states that he told Pierce he was locked in his cell and not allowed out "but for two hours a day," and that food service was "shaking the spoons." (*Id.*). Pierce instructed Plaintiff to speak to the Building Sergeants who at the time were Doane and Austin. (*Id.*). Plaintiff states that he raised other concerns with Doane and Austin about cell temperatures, excessive lighting, and inadequate food portions. (*Id.*). Plaintiff states that his main concern was his placement in punitive segregation absent a notice or hearing to contest his placement in MHU 22 indefinitely. (*Id.*).

According to Pierce and Phelps, during the relevant time-frame, they were not personally familiar with Plaintiff and were not personally responsible for Plaintiff's housing or classification. (D.I. 69-1 at ¶¶ 1, 3; D.I. 69-2 at ¶¶ 1, 3). Pierce and Phelps state the majority of VCC pretrial inmates are housed in Building 22 and have been for almost a decade. (*Id.* at ¶ 4). Some are housed in the facility's infirmary for medical reasons and some are housed in SHU for reasons such as escape risks or for their own protection. (*Id.*). Neither Pierce nor Phelps were made aware of any significant threats to health and safety in Building 22. (*Id.*).

3

Defendants move for summary judgment on the grounds that: (1) Plaintiff has uncovered no evidence to support his deliberate indifference claims; and (2) Defendants are shielded by qualified immunity. In his opposition, Plaintiff argues that more discovery is needed. The Court, however, extended the original discovery deadline multiple times (*see* D.I. 47, 56, 58, 67), discovery closed in November 2017, and the dispositive motion deadline expired in January 2018.

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and a factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

The nonmoving party bears the burden to establish the existence of each element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In doing so, the non-moving party must present specific evidence from which a reasonable fact finder could conclude in his favor. *Anderson*, 477 U.S. at 248; *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989).

4

## III. DISCUSSION

### A. Personal Involvement

The Court first observes there is a paucity of evidence as to either Pierce's or Phelps' involvement in Plaintiff's housing or classification. Nor is there evidence of record that Doane or Austin were responsible for Plaintiff's housing assignment. Both Pierce and Phelps state they were neither personally familiar with Plaintiff nor responsible for Plaintiff's housing or classification. At most, Plaintiff spoke in passing to Pierce when he was touring Building 22 and complained that he was only allowed out of his cell for two hours per day. As is well-known, "a defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved," *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007), although "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Given Defendants' lack of personal involvement, their motion for summary judgment will be granted.

### B. Qualified Immunity

Defendants allege that they are shielded from liability by reason of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).

To survive a claim of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017) (internal quotation marks and citations omitted). Courts have the discretion to perform the two-step qualified immunity test in the order deemed most appropriate in the case at issue. *Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015). As will be discussed, the evidence of record does not support a finding that Defendants violated Plaintiff's constitutional rights and, therefore, they are shielded from suit by reason of qualified immunity.

### 1. Housing/Due Process

Plaintiff alleges that, as a pretrial detainee, his placement in MHU Building 22 violated his right to due process. Plaintiff does not indicate if he raises a substantive due process claim or a procedural due process claim, and his allegations appear to combine the two.

The record does not support Plaintiff's due process claims. Unlike sentenced inmates, pretrial detainees have a liberty interest in being free from punishment prior to conviction under the Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id.* at 538. Therefore, "if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.* at 539.

6

Unconstitutional punishment typically includes both objective and subjective components. *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citations omitted). Given that penological considerations are peculiarly within the province and professional expertise of corrections officials, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response, courts should ordinarily defer to the expert judgment of corrections officials in determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion. *Bell v. Wolfish*, 441 U.S. at 540 n.23.

Plaintiff contends that he was housed in Building 22 as a form of punishment. There is no evidence, however, that Plaintiff's housing in Building 22 was designed to punish him. Instead, the uncontroverted evidence is that the majority of pretrial inmates are housed in Building 22 and have been for ten years. And, in the professional judgment of Pierce and Phelps Building 22 is the appropriate housing area for most pretrial inmates.

After reviewing the record, the Court concludes that no reasonable jury could find a violation of Plaintiff's substantive due process rights. The record reflects that the restrictions imposed upon Plaintiff were reasonably related to the legitimate goal of maintaining his safety, and there is no evidence of record of purposeful intent on the part of prison officials to punish Plaintiff. Therefore, summary judgment is appropriate as to the substantive due process issue.

To the extent Plaintiff raises a procedural due process claim, "[a]lthough pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being [segregated] indefinitely . . . without explanation or review of their

7

confinement." *Stevenson v. Carroll*, 495 F.3d at 69. "The protections due to sentenced inmates provide a floor for what pretrial detainees may expect." *Id.* at 69. "The degree of process required under the Fourteenth Amendment varies depending on the reason for the transfer to more restrictive housing, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons." *Id.* at 70.

If a restraint is imposed for disciplinary reasons, a pretrial detainee is entitled to the process noted in *Wolff v. McDonnell*, 418 U.S. 539 (1974). "'Prison officials [however] must provide detainees who are transferred into more restrictive housing for administrative purposes only an explanation of the reason for their transfer as well as an opportunity to respond.' *Stevenson*, 495 F.3d at 70. This notice must be within a 'reasonable time' following the transfer, *id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 n.8 (1983)), and the opportunity to respond can be satisfied by written grievances, *see Helms*, 459 U.S. at 476.'" *Kanu v. Lindsey*, 739 F. App'x 111, 117 (3d Cir. 2018).

There is no evidence that Plaintiff was confined to MHU for disciplinary reasons. Consequently, he was not entitled to the process outlined in *Wolff v. McDonnell*. Plaintiff was housed in MHU, as most pretrial detainees are. He was not housed there indefinitely; for no more than five to six months, and only until his criminal charges were resolved. At most, procedural due process required only an explanation of the reason for Plaintiff's transfer and an opportunity to respond to the transfer. The record is void of any notice given to Plaintiff regarding his transfer to MHU. It is evident, however, from the record that Plaintiff availed himself of the prison grievance process and had available to him the means to complain or respond to the transfer to MHU by means of a grievance.

8

In light of the forgoing, the Court concludes that Plaintiff received the minimal procedural due process protections he was due. In addition, as discussed above, the evidence of record does not support a finding of personal involvement on behalf of any Defendant regarding Plaintiff's procedural due process rights. Therefore, summary judgment is appropriate as to this issue.

### 2. Conditions of Confinement Claims

Plaintiff contends that he was subjected to unconstitutional conditions of confinement. The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *See Hubbard v. Taylor* ("*Hubbard I*"), 399 F.3d 150, 158 n.13, 166 (3d Cir. 2005).

As discussed above, to establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to punishment. *See Bell v. Wolfish*, 441 U.S. at 538. When analyzing whether a condition of confinement amounts to punishment, the inquiry generally turns on whether the challenged conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538-39 ("A court must decide whether the [particular restriction or condition accompanying pretrial detention] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); *Hubbard I*, 399 F.3d at 158 (discussing analysis of whether condition of confinement constitutes punishment for Fourteenth Amendment purposes). In addition, the Court considers the totality of the circumstances in assessing whether a prisoner's conditions of confinement violate the Fourteenth Amendment. *See Hubbard v. Taylor* ("*Hubbard II*"), 538 F.3d 229, 236, 238 (3d Cir. 2008) (examining totality of circumstances to determine whether conditions of confinement constitute Fourteenth Amendment violation); *Nami v. Fauver*, 82 F.3d 63, 67

(3d Cir. 1996) (explaining that "to determine whether conditions of confinement violate the Eighth Amendment, it is necessary to examine the totality of the conditions at the institution").

In addition, because prison officials must ensure that pretrial detainees receive adequate food, clothing, shelter, and medical care, and must "'take reasonable measures to guarantee [their] safety[,]'" *Farmer v. Brennan*, 511 U.S. 835, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)), a § 1983 claim asserting a conditions of confinement claim must also allege that prison officials acted with deliberate indifference to that plaintiff's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837). An unconstitutional punishment under the Fourteenth Amendment typically includes both objective and subjective components. *See Stevenson v. Carroll*, 495 F.3d at 68.

Here, Plaintiff complains of excessive lockdown in cells, extreme cold temperatures, lighting, and inadequate food portions. (D.I. 80 at 7). He also complains that as a pretrial detainee, he should not have been housed with sentenced inmates. Plaintiff states that he made complaints to Defendants regarding the conditions under which he was housed, particularly, that he was not receiving adequate food portions and there were excessive lockdown times. The evidence of record, however, does not support a finding that the totality of the circumstances violated Plaintiff's Fourteenth Amendment rights.

Both Pierce and Phelps state that they were never made aware of any significant threats to health and safety in Building 22. Regarding Plaintiff's claim that pretrial detainees and sentenced inmates were housed together, there is no evidence of record to suggest that sentenced prisoners

at the VCC, posed a substantial risk of serious harm to Plaintiff as a pretrial detainee. To the extent Plaintiff claims a constitutionally protected interested in being housed apart from sentenced prisoners, the claim fails as a matter of law. *See Hoover v. Watson*, 886 F. Supp. 410, 417 (D. Del. 1995) (finding no authority "to support the assertion that pre-trial detainees who are being lawfully held pending a trial have a liberty interest in being housed separately from sentenced inmates"), *aff'd*, 74 F.3d 1226 (3d Cir. 1995) (table).

Although Plaintiff alleges generally that was subjected to extreme cold, the evidence of record is that Building 22 is equipped with climate control. Plaintiff complains of food portions and asked Austin to advocate for him about the food rations. (D.I. 36 at 2). There is no evidence, however, that Plaintiff was denied food, only that he considered the portions too small and that he took exception to servers shaking food off the serving spoon. While Plaintiff makes the conclusory assertion that he did not receive adequate food portions, he provided no specifics as to how frequently this occurred or how many calories he received.

Plaintiff alleges that Building 22 was illuminated 20 hours a day. Requiring inmates to live in constant illumination may, under certain circumstances, rise to the level of a constitutional violation. *See Bacon v. Minner*, 229 F. App'x 96, 100 (3d Cir. 2007). This, however, is not the case here. Plaintiff was not subjected to continuous light. Notably in *Bacon*, the Third Circuit concluded that a claim that the main lights in a segregated housing unit which "were turned on between the hours of 8:30 am and 11:30 pm" as well as between "4:45 am and 7:00 am" did not rise to the level of a constitutional violation because the plaintiff did not allege that he was subject to constant illumination or had suffered any significant medical problem due to the purportedly excessive illumination and it concluded the inmate's claims "were not objectively serious to warrant constitutional protection." *Id*. Plaintiff's lighting claim fails for the same reason.

Finally, Plaintiff complains he was only allowed out of his cell two hours per day. His complaints of lack of drinking water in the yard indicate that Plaintiff was given time for exercise. (*See* D.I. 36 at 2). Moreover, the allegations do not state a claim of constitutional dimension. *See Brooks v. Barnes*, 2012 WL 3637621, at *2 (M.D.N.C. Aug. 22, 2012) (plaintiff's amended complaint fails to state a claim because allegations regarding "21 hour lock down" and a general lack of outside recreation do not rise to the level of constitutional concern); *Kinser v. County of San Bernardino*, 2011 WL 4801899, at *4 (C.D. Cal. Aug. 25, 2011) ("[plaintiff] alleges that she has been confined to her cell more than 22 hours a day and that she has had to eat all her meals in her cell in close proximity to her toilet. These allegations by themselves do not state a Fourteenth Amendment conditions of confinement claim."); *O'Mara v. Hillsborough Cty. Dep't of Corr.*, 2008 WL 5077001, at *4 (D.N.H. Nov. 24, 2008) ("[plaintiff's] allegations are insufficient to state a cognizable constitutional claim. His complaint that he was afforded only two hours of out-of-cell time a day does not state a claim of constitutional dimension.").

Having considered the foregoing allegations separately, the Court also considers them in their totality. Even when considering the totality of the conditions, the record fails to plausibly establish that the conditions of confinement in Building 22 amounted to punishment. *See e.g.*, *Hubbard II*, 538 F.3d at 232-35 (concluding that triple-celling of pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months, and housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment). No reasonable jury could find for Plaintiff on this issue. Therefore, the Court will grant Defendants' motion for summary judgment on the conditions of confinement claim.

## IV. CONCLUSION

For the above reasons, the Court will: (1) grant Defendants' motion for summary judgment (D.I. 68); and (2) deny as moot Plaintiff's request for counsel, motion for leave to amend and motion for injunctive relief (D.I. 80).

An appropriate order will be entered.